[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Carol Grass, appeals an order of the Probate CT Page 7220 Court of the District of Madison dated May 23, 1994, after a hearing, that the proceeds of account number 100537146 at Liberty Bank (hereinafter "the Bank") in the amount of $60,000 is the sole property of the decedent Ethel Grass.
On October 22, 1992, Ethel Grass, mother of Carol Grass, who was alone at the time she appeared at the Bank, wanted to open a savings account. Ethel Grass met with Heather DeSilio (hereinafter "DeSilio"), manager of the Bank in Clinton, who was familiar with opening accounts for some time. DeSilio testified that Ethel Grass stated that she wanted to open a regular savings account in her name and her daughter's. DeSilio testified that at that time the Bank would open the account without the other party being there. DeSilio gave her a permanent authorization form to take home and get her daughter's signature. (See Exh. 14.) It contained the signature of Ethel H. Grass with Ethel's social security number, the printed name of Carol L. Grass without signature when found had no social security number. From all the evidence adduced at trial Carol was unaware of the existence of this account or had ever signed the permanent authorization form. Carol Grass first became aware of the account when the Bank gave notice of its existence to the Probate Court. Kenneth A. Grass, the defendant, brother to Carol and Ronald Grass, is the executor of his late mother's estate.
At the time that the account was opened Ethel Grass signed a temporary card and made a deposit of $60,000 by her check drawn on her account with Center Bank's Clinton office. (Exh. B.) Ethel died on November 1, 1993 without Carol signing the permanent authorization card.
DeSilio testified that the account is set up with their computer system as a joint account and in the event Carol Grass had appeared then at her Bank with a pass book, she would have been able to withdraw funds from the account. A withdrawal by Carol without a signed authorization card on file would have been improper and would have imposed liability on the Bank for any funds withdrawn without Ethel's approval.
The defendants in this action introduced letters (Exhs. 2-13) written by Carol to her mother. The letters started around August 1989 to May 1991. In these letters it is apparent that Carol had built up an animosity towards all members of her family, particularly her brothers who she felt had been favored by her parents and that she had been betrayed by all of them. By these CT Page 7221 letters Carol attempted to impose a guilt trip upon her mother, leaving her with the impression that someday Carol would do away with herself. Carol reported the company, which was a family business, to OSHA, and threatened to expose her brothers and the company to the Internal Revenue Service. Carol kept reminding her mother of her "last promise" to her that Ethel Grass would find her dead body on the front lawn of her house. Carol who was terminated from the family business, "Astroseal", owned 25% of the stock in the business. Ethel owned 25% and each of the brothers owned 25% each. Carol gave her mother the impression from all her letters that she would destroy the business which was started by Ethel and her deceased husband. The family appeared to be polarized, with Carol alone on one side.
Attorney Sheldon Messinger had been counsel to the company and Ethel since the early 1980s. He prepared Ethel's Last Will and Testament. Ethel had expressed concerns to her attorney that Carol would use whatever resources she had to bring ruin to her brothers and the business and also that Carol might attempt to do away with herself.
All the parties agree that the financial control of the business affairs was in the hands of Ethel. Messinger testified that Ethel "played everything close to the vest." Kenneth Grass testified that he had put up his share of an evaluation placed on Carol's stock by their accountant of $60,000. Ronald Grass testified he did not put up his share because he had been through false alarms before of Carol willing to sell her stock. Kenneth Grass introduced into evidence withdrawals from his and his wife's funds to make up his share and also notes (Exh. 17) made by Ethel on deposits to Centerbank showing "Kenneth and Ron promised in 1990" and "Kenneth Deb" deposit and "Ron owes." (Exh. 17.) Kenneth Grass testified Ethel was CEO and Chief Financial Officer of the company right up to the date of her death.
At a business meeting arranged at Attorney Messenger's office Carol was confronted with the presence of a psychiatrist. The court does not know who made the arrangement for the doctor's presence other than some testimony that the doctor might help the family. Carol, not surprisingly, left and the meeting for the stock evaluation ended.
Carol never agreed to a price for her stock. Kenneth Grass further testified Ethel took it upon herself to attempt to CT Page 7222 negotiate for a sale to them of Carol's stock.
Carol testified she made up with her mother in 1991 and starting around June 1992 when her mother was confined to a wheel chair visited her frequently. Carol and her boyfriend took her mother out to dinners on weekends. Ethel, in her will, left her stock to Kenneth and Ronald; all other assets were equally divided between Ethel's three children. The plaintiff introduced an annuity contract dated October 16, 1992 designating Carol, her daughter, as primary beneficiary and her two sons, Kenneth and Ronald, as contingent beneficiaries with an amount paid of $39,903.46
Kenneth testified he found the original authorization form (Ex. 14) in Ethel's private box at home.
Carol had even gone to the extent of threatening to give her stock in the company away.
The plaintiff claims that § 36a-290 of the Connecticut General Statutes controls. That statute says, in pertinent part:
 "(a) When a deposit account has been established at any bank, or a share account has been established at any Connecticut credit union or federal credit union, in the names of two or more natural persons and under such terms as to be paid to any one of them, or to the survivor or survivors of them, such account is deemed a joint account, and any part or all of the balance of such account, including any and all subsequent deposits or additions made thereto, may be paid to any of such persons during the lifetime of all of them or to the survivor or any of the survivors of such persons after the death of one or more of them. Any such payment constitutes a valid and sufficient release and discharge of such bank, Connecticut credit union or federal credit union, or its successor, as to all payments so made.
 (b) The establishment of a deposit account or share account which is a joint account under subsection (a) of this section is, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, prima facie evidence of the intention of all of the named owners thereof to vest title to such account, including all subsequent deposits and additions made thereto, in such survivor or survivors, in any action or proceeding between any two or more of the CT Page 7223 depositors, respecting the ownership of such account or its proceeds."
The plaintiff argues in this case and the evidence supports the fact that Ethel told the Bank she wanted to open a joint account. The account according to the Bank was joint. The defendants argue that the account does not rise to the status of a joint account until a joint owner has signed an authorization form to complete the contract with the Bank. The purpose of the deposit account contract (Exh. 1) is to regulate the activity of the parties and to set down rules to protect any unauthorized withdrawal. The contract between the Bank and Ethel Grass provides, inter alia, provision for withdrawal.
Section 36a-290(b) provides that when an account is a joint account, which this court concludes has been established, in the absence of fraud or undue influence or clear and convincing evidence to the contrary, it is prima facie evidence of the intention of all the named owners thereof to vest title to such account in such owners during the lifetime of all of them or to the survivor.
In this case the defendants have withdrawn their claim of undue influence. There was no evidence produced to demonstrate any fraud since Carol never even knew of this account. The only remaining ground to defeat title under the statute required the defendant to show by clear and convincing evidence that Ethel did not intend the creation of joint ownership. The fact that Ethel Grass did not turn over the passbook or have Carol sign the authorization form is not clear and convincing evidence that a joint account was not in fact opened. The evidence to the contrary is that Ethel wanted Carol to have the benefit of an annuity. She had provided in her will to leave her stock to her two sons. The withdrawals of funds by Kenneth and Debbie (Exh. 17) add to $18,500, not one-third of what Kenneth Grass stated the stock was worth. Other than the testimony of Kenneth as to the value of Carol's stock as being worth $60,000, no other evidence was introduced as to the value of the stock.
Carol testified that she had reconciled with Ethel. The nasty letter writing which this court does not condone ceased in 1991. All parties agree that Ethel was a smart business woman. She had made provisions in her will for her stock to be distributed to her sons. All other assets were divided equally amongst her three children. CT Page 7224
In conclusion, the defendants failed to meet their burden of proof by clear and convincing evidence that Ethel Grass did not intend a joint account at the Bank. The defendants have failed to rebut the statutory presumptions created by § 36a-290. InManulik v. Devitt, 176 Conn. 663, cited in Dalia v. Lawrence,266 Conn. 51, 59, it was held that § 36-110 of the Connecticut General Statutes was not enacted soley for the protection of banks and that the ownership of trust accounts should be determined in accordance with the settlor's intent and common law prerequisite for the establishment of a valid trust.
This court reasons that the statutory protection afforded in § 36a-290 is likewise soley for the protection of banks.
As in Manulik v. DeWitt, supra, Ethel Grass may have intended a "poor woman's will" having given her stock by her will and now, to equalize her assets, created this joint account.
Accordingly, the defendants have failed to convince the court by clear and convincing evidence that the statutory presumption of § 36a-290 is rebutted.
The appeal is sustained and the title to the Bank account is vested in Carol Grass.
Frank S. Meadow Judge Trial Referee